**Tom Melvin SIMMONS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 388–86.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 25, 1987.

John W. Segrest, court appointed, Waco, for appellant.

Vic Feazell, Dist. Atty., and David N. Deaconson, Asst. Dist. Atty., Waco, Robert Huttash, State's Atty., Austin, for State.

Before the court en banc.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

MILLER, Judge.

A jury convicted appellant for the offense of aggravated robbery of Bruce

---

Nichols and assessed punishment at imprisonment for 45 years. The conviction was affirmed by the Waco Court of Appeals in an unpublished opinion. *Simmons v. State*, No. 10–84–175–CR, delivered January 30, 1986. Appellant petitioned this Court for discretionary review of the Court of Appeals' holding that appellant's conviction was not prohibited by the Double Jeopardy Clause of the United States Constitution. We granted review to examine the Court of Appeals' finding that jeopardy did not prevent the State from obtaining two convictions since two victims were involved. We will reverse the decision of the Court of Appeals.

The relevant facts are as follow. On May 19, 1984, Bruce Nichols and Norma Sawyers rented a room in a lodge in Waco. They carried a portable stereo into the room. Shortly after they entered the room, Valerie Harris knocked on the door and told Nichols that they had been given the wrong room and would have to leave. Nichols opened the door and Harris and appellant burst into the room. Appellant was armed with a handgun. Harris and appellant told Nichols and Sawyers not to look at them. Harris took Sawyers' jewelry. Appellant ordered Nichols to lie on the floor between the two beds, and then began hitting Nichols on the head with the gun while demanding money. Nichols pulled his billfold from his pocket and threw it to appellant. Nichols and appellant then began struggling for the gun and two or three shots were fired, one of which struck appellant. He fled the room and dropped the billfold at the door. Harris picked up the stereo but dropped it on the sidewalk outside of the room. Nichols called the motel management and the police were summoned.

After Harris left the motel room, she hid behind a telephone box and flagged down a passing motorist who recognized her. She then saw appellant running from the motel area. Appellant was taken to the hospital and treated for gunshot wounds to the stomach.

Later, Harris was stopped by police officers for driving without headlights. A box of bullets similar to those used in the robbery was found in the car. Harris was identified at the motel by the victims as the female assailant. She later testified that appellant had committed the robberies with her.

Appellant was arrested on May 25, 1984 for the offense and an indictment was filed charging him with Nichols' robbery on July 19, 1984 (Cause Number 84–306–c). Appellant was later reindicted and enhancement allegations were added (Cause Number 84–341–c). On August 16, 1984, appellant was indicted for the aggravated robbery, enhanced, committed against Sawyers (Cause Number 84–347–c).

On September 12, 1984, appellant was convicted of the robbery against Sawyers and punishment was assessed at imprisonment for 99 years.[1] He was later reindicted a third time for the Nichols robbery on September 20, 1984 (Cause Number 84–365–c), and convicted on October 17, 1984. Appellant now appeals this latter conviction involving the Nichols robbery on the grounds that his rights against double jeopardy have been violated.

The indictment in Cause Number 84–347–c, the Sawyers robbery, stated:

"... on or about the 19th day of May A.D. 1984, and before the presentment of this indictment, in the County and State aforesaid, did then and there while in the course of committing theft and with intent to obtain and maintain control of property; to wit: cash money in United States currency, intentionally and knowingly threaten and place NORMA JO (SAWYERS) NICHOLS in fear of imminent bodily injury and death, by then and

---

1. Trial on this offense began on September 10, 1984. Appellant was found guilty and punishment was assessed. Appellant appealed the conviction to the Tenth District Court of Appeals, which affirmed in an unpublished opinion. *Simmons v. State*, No. 10–84–166, delivered September 26, 1985. Appellant petitioned to this Court for discretionary review of the Court of Appeals' judgment which we denied in an unpublished per curiam decision. *Simmons v. State*, No. 1221–85, delivered November 4, 1986. Thus, the conviction in that case became final in 1986.

there using and exhibiting a deadly weapon; to wit: a handgun.....''

The indictment charging appellant with the Nichols robbery, Cause Number 84–365–c, stated in pertinent part:

"... on or about the 19th day of May A.D. 1984, and before the presentment of this indictment, in the County and State aforesaid, did then and there while in the course of committing theft and with intent to obtain and maintain control of property; to wit: cash money in United States currency, intentionally and knowingly threaten and place BRUCE NICHOLS in fear of imminent bodily injury and death, by then and there using and exhibiting a deadly weapon; to wit: a handgun.....''

Thus, the State used the theft of money from Nichols as the theft allegation necessary for both of the aggravated robbery charges. (The evidence presented at trial revealed that the only cash taken came from Nichols.)

Before the Waco Court of Appeals, appellant argued that the trial court violated his constitutional rights against double jeopardy since the evidence used to convict him of the Nichols robbery, specifically the theft of Nichols' money, was identical to that used to convict him of the Sawyers robbery. The only difference between the two indictments was the name of the person placed in fear of imminent injury.

The Court of Appeals referred to the applicable test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932):

"The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

*Id.* 52 S.Ct. at 182. The appellate court then concluded:

"In the instant case, additional facts were necessary to be proven to establish that aggravated robbery was committed against Mr. Nichols, since in the prior case it was proven only that aggravated robbery was committed against Ms. Sawyers. There may be successive prosecutions against a defendant, without violating the rule against double jeopardy, for as many persons as are affected by his unlawful act, since there are as many separate and distinct offenses as there are persons against whom the defendant has committed his unlawful act."

*Simmons,* supra, slip op. at 4–5. The Court of Appeals then overruled appellant's point of error.

Before this Court, appellant contends that the *Blockburger* test applies to cases where multiple punishments are imposed in one trial; therefore, that test does not apply to the instant case, where two separate trials were conducted. Appellant then argues that in order to convict appellant for Nichols' robbery, the State had to prove that money was taken from Nichols. This proof had already been presented when appellant was tried and convicted for the aggravated robbery of Sawyers. Thus, the same theft evidence was used in both cases which thereby placed appellant in jeopardy twice for the same offense.

This precise issue was addressed in *Ex parte Crosby,* 703 S.W.2d 683 (Tex.Cr.App. 1986). In that case, the defendants broke into a residence owned and occupied by W.H. Thurston and his wife, Mary. After causing bodily injury to both W.H. and Mary Thurston, the defendants robbed only W.H. Thurston, then fled. The defendants were charged in two causes with aggravated robbery. The first indictment alleged that the defendants robbed W.H. Thurston and placed him in fear of bodily harm, and the second indictment alleged that the defendants robbed W.H. Thurston and placed his wife, Mary, in fear of bodily harm. The only difference between the indictments was the person alleged to have suffered serious bodily injury.

This Court found that the facts would not support two separate convictions. We stated:

"The Penal Code makes it clear that theft is an integral part of the offense of aggravated robbery. In the instant case

only one theft of one person occurred. Thus, only one aggravated robbery can have taken place. Applicants appropriated property belonging to W.H. Thurston. The fact that they assaulted more than one person in the course of that theft does not mean that more than one aggravated robbery took place. Perhaps applicants should have been indicted for aggravated assault with respect to Mary Alice Thurston but they should not have been indicted and convicted for an additional aggravated robbery."

*Crosby*, supra at 685. Since the record showed that the defendants were convicted of the W.H. Thurston aggravated robbery first, the convictions based upon the alleged robbery of Mary Alice Thurston were reversed.

The facts in the instant case are identical in substance to those present in the *Crosby* case. Two aggravated robberies were based on a theft of money from only one person. The indictments are identical except for the person alleged to have been placed in fear of imminent bodily harm. Thus, the law as set forth in *Crosby*, supra, controls our disposition of this case.

A second basis for reversal is found in *January v. State*, 695 S.W.2d 215 (Tex. App.—Corpus Christi, 1985), affirmed on State's petition for discretionary review in *January v. State*, 732 S.W.2d 632 (Tex.Cr. App.1987). In that case the defendant was convicted of aggravated kidnapping and attempted capital murder. The evidence showed that the victim had agreed to take the defendant to a gas station. When they arrived at the gas station, the defendant asked the victim to drive him to Mission. The victim refused whereupon the defendant drew a gun and forced the victim to continue to drive. They eventually stopped at a rural canal and the victim tried to escape, but was unsuccessful because the defendant threatened to kill him. The victim later tried to escape again, but the defendant shot him. The victim feigned death until he heard the defendant reload the gun. The victim then ran toward a road, and was taken to a hospital by a passing motorist. He had sustained five gunshot wounds.

The State obtained two indictments. The first alleged that the defendant had committed aggravated kidnapping by abducting and terrorizing the victim. The second indictment alleged that the defendant had committed attempted capital murder by intentionally attempting to cause the death of the victim while in the course of kidnapping.

After finding that the defendant could raise a double jeopardy claim for the first time on appeal, the Court of Appeals considered the defendant's claim. The Court referred to the United States Supreme Court's opinion in *Blockburger*, supra, but then found that the test set out in that opinion was not the only standard for judging double jeopardy claims. In *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), the Supreme Court extended double jeopardy protections to situations where the defendant was tried twice for the same offense from a factual standpoint:

"[A] person [who] has been tried and convicted for a crime which has various incidents included in it ... cannot be a second time tried for one of the incidents without being twice put in jeopardy for the same offense."

*January*, supra, 695 S.W.2d at 222, quoting from *Nielsen*, supra, 131 U.S. at 188, 9 S.Ct. at 676. The Thirteenth Court of Appeals concluded that the *Blockburger* test focuses upon the statutory elements of the two offenses involved and the *Nielsen* test focuses upon the factual issues already resolved by the first trial.

Using the latter test, the Court of Appeals found that the defendant's rights against double jeopardy had been violated when the State was able to convict the defendant for two offenses in two prosecutions wherein the aggravating element for each offense was the other offense. Specifically, in the first trial, the defendant was convicted of kidnapping with the aggravating factor being the attempted murder, and then in the second trial, the kidnapping was used to raise the attempted murder to attempted capital murder.

Applying the same factual analysis to the case at bar, a similar violation of appellant's rights not to be placed in jeopardy twice for the same offense is apparent. In the first trial, the State established that appellant placed Sawyers in fear of death while committing a theft of cash from Nichols. In the second trial, the conviction from which appellant now appeals, the State established that appellant placed Nichols in fear of death while committing a theft of cash from Nichols. The incident common to both of these prosecutions is the theft of cash from Nichols. Under the authority of *January* and *Nielsen,* supra, appellant's successive prosecutions of the same incident effected a violation of his rights against double jeopardy. Appellant's contentions may therefore be sustained on this basis.

Since we have found that the State violated appellant's rights against double jeopardy, the judgment of the Court of Appeals must be reversed. Appellant's conviction for the aggravated robbery of Nichols, Cause Number 84–365–c, is also reversed and the case is remanded to the trial court with orders to dismiss the prosecution. A copy of this opinion will be forwarded by the Clerk of this Court to the Texas Department of Corrections.

CAMPBELL, J., concurs but would vacate and remand in light of *Ex parte Crosby,* 703 S.W.2d 683 (Tex.Cr.App.1986).

CLINTON, Judge, concurring.

The Court abandoned the carving doctrine "for the compelling reason that it encourages crime," *Ex parte McWilliams,* 634 S.W.2d 815, at 822 (Tex.Cr.App.1982) (Opinion on Rehearing), and opted for the "*Blockburger* rule" as the test to resolve jeopardy problems. *Id.,* at 824. See *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). One day criminologists may determine how much crime in Texas has been discouraged since advent of *McWilliams* in 1982, but we already know the mischief caused by adopting "the strict construction of the Constitutions of the United States and of

this State," *McWilliams,* supra, at 824. It is again evident in the instant cause.

In its unpublished opinion the Waco Court of Appeals, failing like some other courts before it to comprehend what *Blockburger v. United States* is all about, invokes *Blockburger* as "the applicable test;" the fallacy in such opinions is a notion that *Blockburger* is a test for *every* jeopardy claim, when it is not.

*Blockburger* was, of course, a prosecution under federal law. As it was then, and still is now, the federal practice is to charge in an indictment as many counts as there are statutory offenses arising out of a transaction, and in one trial to obtain a jury finding on each count. The jeopardy question decided in *Blockburger* is whether an accused in such case may suffer multiple *punishments*—not multiple convictions. In *McWilliams* the majority seems to have overlooked that fine point.

"Since *McWilliams* we have been given to understand that when one act or transaction violates '*two distinct statutory provisions,*' the '*Blockburger* test' is purely a rule of statutory construction, utilized in what is 'essentially a factual inquiry as to legislative intent [rather than] a conclusive presumption of law,' *Garrett v. United States,* [471 U.S. 773], at 779, [105 S.Ct. 2407], at 2411–2412, [85 L.Ed.2d 764], at 771–772 [1985]; *Whalen v. United States,* [445 U.S. 684], at 708, [100 S.Ct. 1432, at 1446, 63 L.Ed.2d 715, at 734 (1980)] (Rehnquist dissenting); *Rathmell v. State,* 717 S.W.2d 33 (Tex.Cr.App.1986) (Clinton dissenting, n. 6). Whether by *Blockburger* or other means a court has determined that the legislative body intended *punishment* for both offenses, it then must decide whether successive *prosecutions* are barred by the Double Jeopardy Clause...."

*Ex parte May,* 726 S.W.2d 573 (Tex.Cr. App.1987).* Accord: *Ex parte Crosby,* 703 S.W.2d 683, at 685 (Tex.Cr.App.1986); see *Davis v. Herring,* 800 F.2d 513, 518 (CA5 1986).

---

* All emphasis is mine throughout unless otherwise noted.

*Blockburger*, then, is a test to determine legislative intent regarding multiple punishments in a single trial on an indictment alleging offenses in two or more counts, used only when an act or transaction violates at least *"TWO* distinct statutory provisions." In the instant cause just *ONE* statutory provision was violated, and the Waco Court thought it was violated *twice*. However, as explained in the opinion of this Court, the same theft was alleged and proved in both separate criminal actions. Thus *Blockburger* has no application whatsoever.

With those observations. I join the opinion of the Court.